**No. 26-1142**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

REHAB MOHAMED,

*Plaintiff-Appellee*

v.

SOCIETY FOR HUMAN RESOURCE MANAGEMENT,

*Defendant-Appellant*

---

On Appeal from the United States District Court for the District of Colorado
Civil Action No. 22-cv-01625-GPG-KAS
Hon. Gordon P. Gallagher

---

# BRIEF OF *AMICUS CURIAE* COLORADO PLAINTIFF EMPLOYMENT LAWYERS ASSOCIATION IN SUPPORT OF PLAINTIFF-APPELLEE

---

Darold W. Killmer
Liana G. Orshan
Reid R. Allison
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001 (fax)
dkillmer@killmerlane.com
lorshan@killmerlane.com
rallison@killmerlane.com
*Counsel for Amicus Curiae Colorado Plaintiff Employment Lawyers Association*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with all applicable requirements of C.A.R. 28, 29, and 32, including all formatting requirements set forth in those rules. Specifically, the undersigned certifies that:

The brief complies with all applicable word limits set forth in C.A.R. 28 and 29. It contains **4,979** words, excluding the portions exempted by Rule. This also brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font. I acknowledge that my brief may be stricken if it fails to comply with any of the requirements of C.A.R. 29 and C.A.R. 32.

I further certify that this brief complies with all applicable requirements of Fed. R. App. P. Rule 29(a)(4)(E)(i-iii), as follows: this brief was not authored in whole or part by a party's counsel; no party or their counsel contributed money intended to fund the preparation or submission of this brief, and no person – other than the amicus curiae, its members, or its counsel – contributed money intended to fund the preparation or submission of this brief.

Respectfully submitted this 5th day of October 2026.

KILLMER LANE, LLP

*s/ Darold W. Killmer*

______________________________

# TABLE OF CONTENTS

**PAGE NO.**

**Certificate of Compliance** ........ ii

**Table of Authorities** ........ iv

**Interest of Amicus Curiae** ........ 1

**Argument** ........ 2

**A. The but-for causation element of § 1981 claims does not require that discrimination (or retaliation) be the sole or primary cause of an adverse action** ........ 3

1. *Bostock's* analysis on but-for causation applies to § 1981 claim ........ 3

2. Neither *Comcast* nor *Gross* requires a showing of sole or primary causation for a plaintiff to succeed on a § 1981 claim ........ 8

**B. The jury's punitive damages award does not violate SHRM's Due Process rights** ........ 12

**Conclusion** ........ 19

**Certificate of Service** ........ 20

## TABLE OF AUTHORITIES

### FEDERAL CASES


*Anderson v. Boeing Co.*, No. 02-CV-196-CVE-FHM,
2005 U.S. Dist. LEXIS 46105 (N.D. Okla. Aug. 2, 2005) ................................ 13

*Arthur v. Pet Dairy*, 593 F. App'x 211 (4th Cir. 2015) .................................... 11 n.4

*Banks v. GM, LLC*, 81 F.4th 242 (2d Cir. 2023) ...................................................... 7

*Bielicki v. Terminix Int'l Co., L.P.*, 225 F.3d 1159 (10th Cir. 2000) ....................... 14

*Bostock v. Clayton County*,
590 U.S. 644 (2020) .................................... 2, 3, 4, 5, 5 n.1, 6, 7, 7 n.2, 8, 10 n.3

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
589 U.S. 327 (2020) ........................................................................................ 9, 10

*Danco, Inc. v. Wal-Mart Stores, Inc.*, 178 F.3d 8 (1st Cir. 1999) ........................... 12

*Delaney v. Bank of Am. Corp.*, 766 F.3d 163 (2d Cir. 2014) ........................... 11 n.4

*Deters v. Equifax Credit Info. Servs.*, 202 F.3d 1262 (10th Cir. 2000) ............ 15 n.5

*DiMarco-Zappa v. Cabanillas*, 238 F.3d 25 (1st Cir. 2001) .................................. 12

*Frappied v. Affinity Gaming Black Hawk, LLC*, 996 F.3d 1038 (10th Cir. 2020) .... 5

*Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228 (4th Cir. 2016) ......... 11 n.4

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) .................................... 9, 10, 11

*Hampton v. Dillard Department Stores, Inc.*,
247 F.3d 1091 (10th Cir. 2001), *cert. denied*, 534 U.S. 1131 (2002) ................ 16

*Heritage Homes of Attleboro v. Seekonk Water Dist.*,
648 F.2d 761 (1st Cir.), 454 U.S. 807 (1981) .................................................... 12

*Horinek v. Spirit Aerosystems, Inc.*,
834 F. Supp. 3d 1210 (D. Kan. 2026) .......................................................... 17, 18

*Ismael v. Roundtree*, 161 F.4th 752 (11th Cir. 2025) ........................................10 n.3

*Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273 (10th Cir. 2010)..............................11

*Lawrence v. DAP Prods., Inc.*,
No. 23-2268, 2025 U.S. App. LEXIS 8754 (4th Cir. Apr. 14, 2025) ..........10 n.3

*Leal v. McHugh*, 731 F.3d 405 (5th Cir. 2013) ................................................11 n.4

*Marrow v. Allstate Sec. & Investigative Servs.*,
167 F. Supp. 2d 838 (E.D. Pa. 2001)...........................................................17 n.6

*Mosley v. Preston Cycles W. LLC*,
No. 21-13527, 2024 U.S. App. LEXIS 1379 (11th Cir. June 7, 2024) ..........5 n.2

*Osterhout v. Bd. of Cty. Comm'rs*, 10 F.4th 978 (10th Cir. 2021) ..........................13

*Pacific Mut. Life Ins. Co. v. Haslip*,
499 U.S. 1, 21, 113 L. Ed. 2d 1, 111 S. Ct. 1032 (1991) ...................................12

*Pavon v. Swift Transportation Co.*, 192 F.3d 902 (9th Cir. 1999) ..........................16

*Payne v. Jones*, 711 F.3d 85 (2d Cir. 2013)...........................................................13

*Perkins v. Fed. Fruit & Produce Co.*, No. 11-cv-00542-JAP-KLM,
2013 LX 84403 (D. Colo. May 14, 2013) ..........................................................15

*Price Waterhouse v. Hopkins*,
490 U.S. 228 (1989) (Kennedy, J., dissenting)...............................................8, 9

*Rowlett v. Anheuser-Busch, Inc.*, 832 F.2d 194 (1st Cir. 1987) ..............................12

*Sherman v. Kasotakis*, 314 F. Supp. 2d 843 (N.D. Iowa 2004).........................16, 17

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 424 (2003)...................13, 17

*Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*,
600 U.S. 181 (2023)..........................................................................................7, 8

*Swinton v. Potomac Corporation*, 270 F.3d 794 (9th Cir. 2001) ............................16

*Thomas v. CalPortland Co.*, 993 F.3d 1204 (9th Cir. 2021) ............................... 5 n.1

*Thomas v. iStar Fin., Inc.*, 652 F.3d 141 (2d Cir. 2010) ........................................ 16

*Univ. of Tex. Southwestern Med. Ctr. v. Nassar*,
570 U.S. 338 (2013)........................................................................ 4, 8, 9

*Wilson v. AIM Specialty Health*, 176 F.4th 977 (7th Cir. 2026) ....................... 10 n.3

*Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329 (11th Cir. 2023) ............. 7 n.2, 8

*Youren v. Tintic Sch. Dist.*, 343 F.3d 1296 (10th Cir. 2003) .................................. 12

*Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020 (9th Cir. 2003).................... 15, 16

*Ziparo v. CSX Transp., Inc.*, 160 F.4th 314 (2d Cir. 2025)........................... 5 n.1, 10

**OTHER AUTHORITIES**

Anne Rodgers, *The Counterintuitive Court: How the Supreme Court's Punitive Damages Jurisprudence Endangers Marginalized Communities*,
29 WASH. & LEE J. CIVIL RTS. & SOC. JUST. 189 (Spring 2023).................. 18, 19

Martin Katz, *Bostock and the Limits of Textualism: A Doctrinal Structuralist Approac*h, 66 WM. & MARY L. REV. 1389 (May 2025)....................................... 5

Robert G. Shwemm, *Fair Housing and the Causation Standard After Comcast*,
66 VILL. L. REV. 63 (2021) ........................................................................ 4, 8

Stacy Hicox, *Reduction of Punitive Damages for Employment Discrimination: Are Courts Ignoring our Juries?*,
54 MERCER L. REV. 1081 (Spring 2003) ......................................... 13, 14, 18 n.7

## INTEREST OF AMICUS CURIAE

*Amicus curiae* Colorado Plaintiff Employment Lawyers Association ("PELA") is Colorado's largest professional organization comprised exclusively of lawyers who represent employees in cases involving employment claims, including discrimination and retaliation claims under 42 U.S.C. § 1981. Founded in 1989, PELA is a nonprofit organization created to increase public awareness of the rights of workers and of workplace fairness, support attorneys and others in advancing those rights, and advocate for changes to state and federal law which may impede those rights.

PELA's members have substantial experience addressing and advocating for the rights of employees who have been subjected to race discrimination and/or retaliation for reporting discrimination. They are dedicated to enforcing laws which protect workers from unfair labor practices, including race discrimination and retaliation. PELA strives to protect the rights of its members' clients and regularly supports precedent-setting litigation affecting the rights of individuals in the workplace.

PELA has an interest in the three following legal issues raised by the Opening Brief filed by Society for Human Resource Management ("SHRM") [ECF 18]: (1) the correct formulation of the causation standard in 42 U.S.C. § 1981 cases and (2) the constitutionality of the punitive damages award.

Authority to file this brief is by leave of the Court, detailed separately by contemporaneously filed motion for leave.

# I. ARGUMENT

First, neither the Supreme Court nor this Court has ever required or even implied that discrimination or retaliation be the sole or primary cause of an adverse action to succeed on claims under 42 U.S.C. § 1981. Defendant-Appellant Society for Human Resource Management's ("SHRM") arguments rest on a dangerous misstatement and misinterpretation of Supreme Court cases, and cases and secondary authority following these cases make clear that § 1981's but-for-cause standard is the same as that discussed in *Bostock v. Clayton County*, 590 U.S. 644 (2020), applied under the Age Discrimination in Employment Act, and illustrated by traditional tort principles addressing multiple causes. This Court must reject SHRM's assertions to the contrary by upholding the district court's jury instructions on causation and reiterating that the traditional but-for-cause standard applies in § 1981 cases.

Second, SHRM's Answer Brief overlooks the key principle that race discrimination is the exact type of intentional employer behavior that punitive damages exist to deter, and that is considered exceptionally reprehensible in our society, as shown by the jury's award. Affirming the district court's rejection of SHRM's remittitur request for the punitive damages award is critical to re-center

and re-focus on the vital importance of punitive damages to deter race discrimination and retaliation that is prohibited by § 1981.

**A. <u>The but-for causation element of § 1981 claims does not require that discrimination (or retaliation) be the sole or primary cause of an adverse action.</u>**

SHRM fundamentally misinterprets Supreme Court precedent in arguing that the court below erred in instructing the jury that discrimination (or retaliation) need not be the sole or primary cause of Ms. Mohamed's termination to find liability on her § 1981 claims. SHRM argues that there is more than one but-for-cause standard with a different definition depending on the claim, so that *Bostock*'s discussion of but-for cause under Title VII does not apply to the but-for-cause standard under § 1981 (or presumably, based on SHRM's position, the Age Discrimination in Employment Act ["ADEA"]). But black letter law refutes SHRM's argument, as does a close reading of *Bostock* and other Supreme Court and federal circuit court of appeals authority. The district court's jury instruction on causation, which was supported by cases from the Supreme Court and this Court addressing the standard for but-for cause, was not erroneous and provides no basis for reversal.

**1. <u>*Bostock*'s analysis on but-for causation applies to § 1981 claims.</u>**

The district court's causation instruction provided:

[R]ace must be a "but-for" cause of Ms. Mohamed's termination.

> SHRM may be held liable for race discrimination if other factors contributed to its decision to terminate Ms. Mohamed, as long as Ms. Mohamed can show that her race was the factor that made a difference. Ms. Mohamed's race does not need to be the sole or primary cause of Defendant's decision to terminate her.

App. Vol. 1 at 198. Identical language, except replacing "retaliation or retaliatory motive" for "race," was used in the retaliation instruction. *Id.* at 200. As argued by Ms. Mohamed in her Answer Brief and as the court below recognized, longstanding and uncontroversial precedent on common law and statutory interpretation provides the proposition that there can be multiple causes for an adverse action but the defendant will still be liable if the adverse action would not have occurred but for an unlawful motive.

There are four causation standards that are most commonly used in the law, listed here from most stringent to least: sole motive, primary motive, but-for causation, and motivating factor. Robert G. Shwemm, *Fair Housing and the Causation Standard After Comcast*, 66 VILL. L. REV. 63, 71 (2021). The Supreme Court in *Bostock* addresses each of these, stating that although Title VII "incorporates the 'simple' and 'traditional' standard of but-for causation," it "could have taken a more parsimonious approach." 590 U.S. at 656 (quoting *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 346, 360 (2013)). The but-for-cause standard is more lenient than other standards:

> As it has in other statutes, [Congress] could have added "solely" to indicate that actions taken "because of" the confluence of multiple

> factors do not violate the law. (Citing 11 U. S. C. § 525; 16 U. S. C. § 511). Or it could have written "primarily because of" to indicate that the prohibited factor had to be the main cause of the defendant's challenged employment decision." (Citing 22 U. S. C. § 2688). But none of this is the law we have.

*Id.* at 656-57.

*Bostock* then explains—and this is a key part of the opinion that SHRM appears to have overlooked—that regarding Title VII, Congress *also* allows a plaintiff to prevail under a more forgiving standard: "merely by showing that a protected trait like sex was a 'motivating factor' in a defendant's challenged employment practice." *Id.* at 657 (quoting 42 U.S.C. § 2000e-2(m)); *see also Frappied v. Affinity Gaming Black Hawk, LLC*, 996 F.3d 1038, 1047 n.2 (10th Cir. 2020) ("The Court [in *Bostock*] acknowledged that Title VII also bars discrimination in cases in which sex is a 'motivating factor,' but states that its analysis does not depend on the motivating-factor test."). "It has not been in doubt since 1989 that Title VII incorporates a 'but-for' test, along with a second 'motivating factor' causal test…. And congress amended the statute in 1991 to make this clear." Martin Katz, *Bostock and the Limits of Textualism: A Doctrinal Structuralist Approac*h, 66 WM. & MARY L. REV. 1389, 1420 n.132 (May 2025)).[1]

[1] *See also Ziparo v. CSX Transp., Inc.*, 160 F.4th 314, 329-30 (2d Cir. 2025) (summarizing *Bostock*'s discussion of these four standards of causation); *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1209 (9th Cir. 2021) ("In *Bostock*, the Court explained that Congress can avoid imposing liability under a but-for causation theory by drafting legislation that uses terms like 'solely' and 'primarily' to modify

The Supreme Court makes clear that its opinion in *Bostock* "focus[es] on the more traditional but-for causation standard" rather than the "motivating factor test" because "nothing in [its] analysis [in *Bostock*] depends on the motivating factor test." *Bostock*, 590 U.S. at 657. Thus, although liability under Title VII "can sometimes follow even if sex *wasn't* a but-for cause of the employer's challenged decision," the "more traditional but-for causation standard…continues to afford a viable, ***if no longer exclusive***, path to relief under Title VII." *Id.* (first alteration in original, second alteration added). Accordingly, *Bostock*'s analysis of but-for causation applies equally to § 1981 claims, Title VII claims relying on a single motive rather than a mixed motive theory[2], and all other claims that require but-for

---

'because of.'…Such terms would modify the traditional but-for standard, indicating respectively that 'actions taken because of the confluence of multiple factors do not violate the law' or 'the prohibited factor had to be the main cause of the defendant's challenged employment decision.'…But absent such modifiers, the Court instructs us that 'because of' means 'but for.' … And—at least in the Title VII context—a 'but-for causation standard means a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision.'" (quoting *Bostock*, 590 U.S. at 656-57.)).

[2] Cases sometimes use the terminology "single-motive" claims versus "mixed motive" to distinguish when to apply but-for cause versus motivating factor standards to a Title VII claim. *See*, *e.g.*, *Mosley v. Preston Cycles W. LLC*, No. 21-13527, 2024 U.S. App. LEXIS 1379, at *15-16 & n.6 (11th Cir. June 7, 2024). "As the Supreme Court explained in *Nassar*, the motivating-factor standard under § 2000e-2(m)… requires a 'lessened' showing….That 'lessened' showing is sufficient for a Title VII discrimination claim, which requires only a showing that race "was a motivating factor for the defendant's adverse employment action,' even if some other (lawful) consideration would have led to the same outcome….In other words, the motivating-factor standard only asks whether 'illegal bias played a role' even if bias was not a necessary link in the causal chain…..[Thus,] [wi]ith a

causation for a plaintiff to succeed, such as ADEA claims and Title VII retaliation claims. *See, e.g.*, *Banks v. GM, LLC*, 81 F.4th 242, 275 (2d Cir. 2023) (explaining that claims brought under § 1981 are subject to the same but-for-causation standards as those under Title VII discussed in *Bostock*, and "[a]s the Supreme Court…made clear in *Bostock*…, there can be more than one 'but for' cause of an adverse employment action" (quoting *Bostock*, 590 U.S. at 656)).

Thus, with claims requiring a showing of but-for cause, "a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision" because the plaintiff need not prove "the prohibited factor" was "'solely'" or "'primarily'"…[the] cause of the defendant's challenged employment decision." *Bostock*, 590 U.S. at 656-657 (citation omitted). As the Supreme Court explicitly stated in a later decision invoking *Bostock*, under "'the

---

mixed-motive (or motivating-factor) claim,… a plaintiff need only show that a protected consideration contributed in some way to the outcome—even if it ultimately changed nothing." *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1338-39 & n.4 (11th Cir. 2023) (citation omitted). However, a claim requiring but-for causation can still succeed when there are multiple but-for causes, such as an unlawful reason and other lawful reasons, and "this does not transform [the] claim into a mixed-motive claim" that would apply the less stringent motivating factor test. *Id.* at 1340. "[I]f…there [are] two but-for causes—unlawful retaliation [or discrimination] and a lawful factor—[a plaintiff] could have a claim if the two combined to result in an adverse action that would not have occurred without that combination. In that instance, the retaliation [or discrimination] would be a but-for cause because the adverse action would not have occurred without it. The fact that a lawful consideration was also a necessary factor would not defeat [the] claim." *Id.* (citing *Bostock*, 590 U.S. at 656).

simple and traditional standard of but-for causation,'" a "defendant's actions need not be the primary or proximate cause of the plaintiff's injury to qualify" as a but-for cause. *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 600 U.S. 181, 289 (2023) (quoting *Bostock*, 590 U.S. 656).

#### 2. **Neither *Comcast* nor *Gross* requires a showing of sole or primary causation for a plaintiff to succeed on a § 1981 claim.**

Contrary to SHRM's argument that *Bostock* addressed some other nebulous but-for standard applicable only to Title VII claims, "*Bostock*'s description of but-for causation—and the idea that outcomes can have multiple but-for causes—was nothing new. The Court articulated the longstanding traditional test for but-for causation: 'a but-for test directs us to change one thing at a time and see if the outcome changes.'" *Yelling*, 82 4th 1329, 1339 (quoting *Bostock*, 590 U.S. at 656). Id. "That standard is 'textbook tort law,'" *id.* (quoting *Nassar*, 570 U.S. at 347), "and reflects 'the common understanding' of factual causation." *Id.* (quoting *Burrage v. United States*, 571 U.S. 204, 211-12 (2014)). "[T]he but-for test requires, as the most recent Restatement of Torts observed in 2010, a 'counterfactual inquiry' in which 'one must ask what would have occurred if the actor had not engaged in the tortious conduct.'" Schwemm, *supra*, 66 VILL. L. REV. at 75 (quoting Restatement (Third) of Torts: Liability for Physical and Emotional Harm, § 26 cmt. e (2010)). As the lower court's jury instruction correctly recited, this standard of causation means that "the motive in question made a difference to

the outcome." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 281 (1989) (Kennedy, J., dissenting) (superseded by statute).

SHRM cites two Supreme Court cases, *Comcast* and *Gross*, to support its erroneous argument that a different but-for-cause standard applies to § 1981 claims and requires proof that discrimination or retaliation is the sole or primary factor of the adverse action. But neither *Comcast* nor *Gross* provide a different standard of causation than the traditional but-for cause from black letter tort law addressed in *Bostock.*

In *Comcast*, the Court began with the proposition that "[i]t is 'textbook tort law' that a plaintiff seeking redress for a defendant's legal wrong typically must prove but-for causation." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 331 (2020) (quoting *Nassar*, 570 U.S. at 347). The Court described the "'but for' common law causation test" as "[the] ancient and simple'…'default' or 'background' rule against which Congress is normally presumed to have legislated when creating its own new causes of action." *Id.* (quoting *Nassar*, 570 U.S. at 346-347). The Court then held that this "includes when it comes to federal antidiscrimination laws like §1981." *Id.* (citing *Nassar*, 570 U.S. at 346-347, which addressed Title VII retaliation, and *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176-177 (2009), which addressed the ADEA)).

No discussion in *Comcast* supplies any legitimacy to SHRM's argument that this but-for-causation standard is any different than that addressed in *Bostock* or any other primary or secondary authority discussing common law or statutory but-for cause requirements. Indeed, §1981 cases that apply the but-for-cause standard from *Comcast* explicitly provide that a plaintiff may successfully show but-for causation even if discrimination (or retaliation) was not the sole cause of the adverse actions because "[o]ften events have multiple but-for causes." *Ziparo v. CSX Transp., Inc.*, 160 F.4th 314, 329 (2d Cir. 2025) (quoting *Bostock*, 590 U.S. at 656).[3]

Likewise, *Gross*, which held that the ADEA requires the plaintiff to "prove that age was the 'but-for' cause of the employer's adverse decision," never states or even implies that the plaintiff must show age was the sole or primary factor of

---

[3] *Accord Wilson v. AIM Specialty Health*, 176 F.4th 977, 988 (7th Cir. 2026) (recognizing that it would be error to require a plaintiff in a §1981 case to prove that an adverse employment action was "solely" due to race)); *Ismael v. Roundtree*, 161 F.4th 752, 761 (11th Cir. 2025) ("[I]t not required, under either § 1981 or Title VII, to show that the unlawful purpose was the *only* contributing factor. '[T]he traditional but-for causation standard means a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision.'…A plaintiff can even succeed where there are multiple butfor [sic] causes: 'so long as the plaintiff's [protected characteristic] was *one but-for cause* of [the adverse] decision, that is enough to trigger the law.'" (quoting *Bostock*, 490 U.S. at 656)); *Lawrence v. DAP Prods., Inc.*, No. 23-2268, 2025 U.S. App. LEXIS 8754, at *4 (4th Cir. Apr. 14, 2025) ("A cause need not work in isolation to be a but-for cause; rather, the plaintiff only bears the burden of showing that the protected activity was a but-for cause of [the adverse action], not that it was the sole cause." (Citation omitted));

such decision (despite SHRM's assertion in its Opening Brief that it does so). 557 U.S. at 176. Indeed, this Court's opinion in *Jones*, which Ms. Mohamed cited below as support for the jury instruction given, rejected the argument that *Gross* compelled dismissal of a claim because the plaintiff did not prove that her employer "was motivated solely by age when making [the] adverse employment decision." *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010). This Court explicitly provided:

> We have concluded that this causal standard [but-for cause] does "not require[] [plaintiffs] to show that age was the sole motivating factor in the employment decision."…Instead, an employer may be held liable under the ADEA if other factors contributed to its taking an adverse action, as long as "age was the factor that made a difference."…*Gross* does not hold otherwise. Accordingly, *Gross* does not disturb longstanding Tenth Circuit precedent by placing a heightened evidentiary requirement on ADEA plaintiffs to prove that age was the sole cause of the adverse employment action.

*Id.* at 1277-78 (citation omitted).[4] Almost identical language was used in the district court's jury instruction.

Accordingly, the standard for but-for cause, as required for § 1981 claims, is the same but-for-cause standard applied to claims under numerous other statutes,

[4] *Accord Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228, 236 n.5 (4th Cir. 2016) (also explaining that under the formulation either that discrimination be "the but-for" cause or that it be "a but-for cause," discrimination need not be the "only or sole cause" of the adverse action to succeed on a claim requiring but-for cause); *Arthur v. Pet Dairy*, 593 F. App'x 211, 220-21 (4th Cir. 2015); *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168-69 (2d Cir. 2014); *Leal v. McHugh*, 731 F.3d 405, 414-15 (5th Cir. 2013).

including Title VII and the ADEA, and the court below did not err in instructing the jury that "SHRM may be held liable for race discrimination if other factors contributed to its decision to terminate Ms. Mohamed, as long as Ms. Mohamed can show that her race was the factor that made a difference," and that "Ms. Mohamed's race does not need to be the sole or primary cause of [SHRM's] decision to terminate her." App. Vol. 1 at 198; *see also id.* at 200 (on retaliation).

### B. **The jury's punitive damages award does not violate SHRM's Due Process rights.**

This Court does and must "take seriously the purpose of punitive damages, i.e., 'to punish what has occurred and to deter its repetition.'" *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1309 (10th Cir. 2003) (quoting *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 21, 113 L. Ed. 2d 1, 111 S. Ct. 1032 (1991)). In undertaking this review, it cannot be gainsaid that "acts of intentional discrimination are just the sort of conduct that punitive damages aim to deter." *DiMarco-Zappa v. Cabanillas*, 238 F.3d 25, 38 (1st Cir. 2001) (citing *Danco, Inc. v. Wal-Mart Stores, Inc.*, 178 F.3d 8, 17-18 (1st Cir. 1999); *Rowlett v. Anheuser-Busch, Inc.*, 832 F.2d 194, 205-06 (1st Cir. 1987); *Heritage Homes of Attleboro v. Seekonk Water Dist.*, 648 F.2d 761, 763 (1st Cir.), *vacated on other grounds*, 454 U.S. 807 (1981)). The district court correctly concluded that this important race discrimination and retaliation employment case involved sufficient evidence that warranted deterrence through a punitive damage award that was not excessive.

"[T]he area of assessing punitive damages, implicative of various societal policies and lacking any basis in economics, rests strictly within the province of the jury." *Anderson v. Boeing Co.*, No. 02-CV-196-CVE-FHM, 2005 U.S. Dist. LEXIS 46105, at *6 (N.D. Okla. Aug. 2, 2005). "There are no 'concrete constitutional limits on the ratio between' punitive and compensatory damages. Instead, the ultimate issue is whether "the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Osterhout v. Bd. of Cty. Comm'rs*, 10 F.4th 978, 1002 (10th Cir. 2021) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 424, 426 (2003)). Indeed, courts have recognized that

> Awards of punitive damages are by nature speculative, arbitrary approximations. No objective standard exists that justifies the award of one amount, as opposed to another, to punish a tortfeasor appropriately for his misconduct. Nor is there any formula to determine the dollar amount needed to effectuate deterrence.

*Payne v. Jones*, 711 F.3d 85, 93 (2d Cir. 2013).

> Because of the special, often fact-bound, nature of punitive damages
>
> Trial courts considering a motion to reduce punitive damages or appellate courts engaging in a de novo review of a trial court's denial of a new trial on punitive damages need to respect the role of the jury in making factual determinations that support or undermine a claim for punitive damages. As shown by lower courts' application of the BMW model, claims for punitive damages often turn on the interpretation of the facts. Certainly, the most significant factor, reprehensibility, rests on the trier of fact's impressions of the severity of the acts of discrimination. By relying too heavily on a ratio of punitive damages to compensatory damages or by only

> comparing the award to the statutory cap or other awards based on different facts, the court may usurp the jury's role in awarding punitive damages to plaintiffs who have already succeeded in establishing that their employer discriminated against them with intent or reckless disregard of the law.

Stacy Hicox, *Reduction of Punitive Damages for Employment Discrimination: Are Courts Ignoring our Juries?*, 54 MERCER L. REV. 1081, 1120-1122 (Spring 2003).

Here, the district court having heard all of the same evidence as the jury, correctly found that the punitive damage award was supported by the evidence and was not excessive. In reviewing a punitive damages award on appeal, this Court has stressed that the "trial court is in the unique position to observe the witnesses and their demeanor as well as the jurors' attitude during the trial." *Bielicki v. Terminix Int'l Co., L.P.*, 225 F.3d 1159, 1165-66 (10th Cir. 2000). The district court reasonably summed up the evidence as plaintiff having "her claims of discrimination and retaliation, which the jury unambiguously found to be substantiated, systematically disregarded and dismissed [by SHRM] as she was isolated from assistance and told, in effect, that she was the problem." Dist. Ct. Order at 12. The court rightly considered "systematic acts to retaliate against Mohamed taken with the aid and consent of senior management for raising [substantiated] discrimination complaints" to be "far from the low end" of reprehensibility in the employment discrimination context. *Id.* at 13. The district

court's best-positioned view of the facts and correct application of the law should be affirmed and the jury's reasonable punitive damages award allowed to stand.

Review of recent jurisprudence around the country reveals a blinkered focus on and robotic application of ratios of punitive-to-compensatory damages. However, some courts have correctly recognized that the seminal Supreme Court cases on this issue involved fraudulent business practices that harmed numerous plaintiff-consumers in "purely economic" ways.[5] *See, e.g.*, *Perkins v. Fed. Fruit & Produce Co.*, No. 11-cv-00542-JAP-KLM, 2013 LX 84403, at *22-23 (D. Colo. May 14, 2013) (quoting *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1043-44 (9th Cir. 2003)). In contrast, cases involving intentional race or ethnicity discrimination cause substantially greater harms, for which greater proportions of punitive damages are warranted. *Id.*

> There can be no question of the importance of our society's interest in combating discrimination; this nation fought the bloodiest war in its history in part to advance the goal of racial equality, adding several amendments to the Constitution to cement the battlefield victory. *See* U.S. Const. amends. XIII, XIV, XV. Freedom from discrimination on the basis of race or ethnicity is a fundamental human right recognized in international instruments to which the United States is a party, *see, e.g.*, International Convention on the Elimination of All Forms of Racial Discrimination, *adopted by the U.N. General Assembly* Dec. 21,

---

[5] This Court has recognized that "[b]oth *BMW* and *Continental Trend* noted that these firm ratios are most applicable to purely economic injury cases where injury is not hard to detect" and that in cases like this one "where the injury is primarily personal, a greater ratio may be appropriate." *Deters v. Equifax Credit Info. Servs.*, 202 F.3d 1262, 1272-73 (10th Cir. 2000).

> 1965, 660 U.N.T.S. 195 (*entered into force for the United States* Nov. 20, 1994), and the intentional deprivation of that freedom is highly reprehensible conduct.
>
> Racial discrimination often results in large punitive damage awards. *See Swinton*, 270 F.3d at 817-18 (finding that an employer's failure to address a pattern of racial slurs and harassment was sufficiently reprehensible to support a $ 1 million punitive damage award); *Pavon v. Swift Transportation Co.*, 192 F.3d 902, 909 (9th Cir. 1999) (finding that an employer's toleration of racial slurs and termination of an employee who complained of them was sufficiently reprehensible to justify a $ 300,000 punitive damage award); *Hampton v. Dillard Department Stores, Inc.*, 247 F.3d 1091, 1116 (10th Cir. 2001), *cert. denied*, 534 U.S. 1131, 151 L. Ed. 2d 973, 122 S. Ct. 1071 (2002) (finding that where two African-American women had been suspected of shoplifting and briefly detained on the basis of their race, the store's conduct was sufficiently reprehensible to support the award of $ 1.1 million in punitive damages). We have no trouble concluding that the corporate defendants' discrimination against Zhang was sufficiently reprehensible to justify a substantial punitive damages award.

*Zhang*, 339 F.3d at 1043-44 (holding that a "ratio of the $ 2.6 million punitive damage award to the $ 360,000 compensatory damage award [,] slightly more than seven to one" was not "constitutionally excessive); *see also Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 148 (2d Cir. 2010) ("[C]ourts have noted the relative reprehensibility of intentional discrimination as distinguished from some other forms of purely economic injury."); *Sherman v. Kasotakis*, 314 F. Supp. 2d 843, 872-73 (N.D. Iowa 2004) ("While this case is not one in which the 'highest' threshold of reprehensibility is present (i.e. acts and threats of violence), . . . the degradation of an individual in this fashion based solely on their race in today's

society certainly falls, in this court's view, in the upper echelon of reprehensible conduct.").[6]

Earlier this year, another district court in this circuit correctly applied a persuasive analysis in a comparable case in which "the jury reasonably found that defendant terminated plaintiff's employment due to racial discrimination and retaliation for whistleblowing—conduct which the jury could rightly find is particularly egregious." *Horinek v. Spirit Aerosystems, Inc.*, 834 F. Supp. 3d 1210, 1223 (D. Kan. 2026). The court in *Horniek* upheld a "total punitive award [with a ratio of] 7.65:1, which is well within the generalized single-digit range given by *State Farm* and is not unreasonable, especially when compared to the ratios in *BMW* and *State Farm*—500:1 and 145:1, respectively." *Id.* In reaching this conclusion, the court reiterated that the *BMW* and *State Farm* cases "did not hold that punitive damages must be limited to a 1:1 ratio with any 'substantial'

[6] Courts considering other employee-protective civil rights statutes have also made clear the importance of punitive damages to the overall statutory scheme. *See, e.g.*, *Marrow v. Allstate Sec. & Investigative Servs.*, 167 F. Supp. 2d 838, 843-44 (E.D. Pa. 2001). *Marrow* reasoned that the availability of punitive damages in an FLSA case was necessary to fully effectuate the statute's goal of protecting employees and deterring employers from retaliating after complaints were made. *Id.* Though the statutory scheme is a different one in this case, it serves similar purposes of protecting employees from discrimination and from retaliation. And, as in *Marrow*, punitive damages in § 1981 are "meant to safeguard the overall operation of the [statute] by providing employees with protection substantial enough to discourage employers from engaging in retaliation. As such, confining [the damages inquiry] to 'making the plaintiff whole' would fail fully to implement the intent of Congress." *Id.*

compensatory award. Both cases actually rejected bright-line rules." *Id.* For the same reasons, the jury's verdict here (with a 6.67-to-1 ratio) must stand.

Ultimately, punitive damages are especially necessary and warranted in cases of corporate malfeasance[7] that targets members of marginalized communities. "A high award furthers the legitimate purpose of signaling to society that intentional targeting of marginalized communities is a wrong that our legal system will vindicate. The purpose of a large punitive damages award is to *deter* predatory and dangerous company conduct." Anne Rodgers, *The Counterintuitive Court: How the Supreme Court's Punitive Damages Jurisprudence Endangers Marginalized Communities*, 29 WASH. & LEE J. CIVIL RTS. & SOC. JUST. 189, 230-231 (Spring 2023). When this Court or any other court reduces a punitive damages award, it risks "signaling to companies that their behavior is fine," which in turn exacerbates the underlying injustices sought to be remedied by our system's civil

[7] "The federal employment discrimination statutes, in stark contrast to the liability reviewed in BMW, specifically provide notice to all employers of the possibility and amount of punitive damages available to a victim of employment discrimination." Stacy Hicox, *Reduction of Punitive Damages for Employment Discrimination: Are Courts Ignoring our Juries?*, 54 MERCER L. REV. 1081, 1092 (Spring 2003). And as the District Court rightly highlighted "[i]f anyone knew the possibility of high potential punitive damages for employment discrimination and malicious retaliation, it was SHRM, which trains businesses on related issues including potential liability." Dist. Ct. Order at 14.

rights laws. *Id.* This Court should refuse to send that signal and instead affirm the jury's reasonable verdict as the proper and necessary deterrent that it clearly is.

## II. CONCLUSION

For the reasons stated above, this Court must affirm the judgment below in full.

Respectfully submitted this 5th day of October 2026.


KILLMER LANE, LLP

*s/ Darold W. Killmer*
Darold W. Killmer
Liana G. Orshan
Reid R. Allison
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001 (fax)
dkillmer@killmerlane.com
lorshan@killmerlane.com
rallison@killmerlane.com
*Counsel for Amicus Curiae Colorado Plaintiff Employment Lawyers Association*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2026, I electronically filed the foregoing **BRIEF OF AMICUS CURIAE** via the PACER NextGen system, which will send notification of such filing to the following:

Tanja Darrow
tdarrow@littler.com
Virginia L. Woodfork
vwoodfork@littler.com
Kelsey A. VanOverloop
kvanoverloop@littler.com
*Attorneys for Defendant-Appellant*

Ariel Beryl DeFazio
ariel@lowrey-parady.com
Hunter Anthony Swain
hunter@swainemploymentlaw.com
*Attorneys for Plaintiff-Appellee*

KILLMER LANE, LLP

*s/ Jesse Askeland*
______________________________
Jesse Askeland