No. 26-1142

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

REHAB MOHAMED,

Plaintiff-Appellee

v.

SOCIETY FOR HUMAN RESOURCE MANAGEMENT,

Defendant-Appellant

On Appeal from the United States District Court for the District of Colorado
District Court Case No. 1:22-cv-01625-GPG-KAS
Judge Gordon P. Gallagher

# DEFENDANT-APPELLANT SOCIETY FOR HUMAN RESOURCE MANAGEMENT'S REPLY BRIEF


Tanja Darrow
tdarrow@littler.com
Littler Mendelson, P.C.
633 West Fifth Street
63rd Floor
Los Angeles, CA 90071
Telephone: 213.443.4300
Facsimile: 213.443.4299

Virgina L. Woodfork
vwoodfork@littler.com
Kelsey A. VanOverloop
kvanoverloop@litter.com
Littler Mendelson, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO 80202
Telephone: 303.629.6200
Facsimile: 303.629.0200

*Attorneys for Defendant-Appellant*


**Oral Argument Requested**

# TABLE OF CONTENTS

**ARGUMENT** .......... 1

**I. THE ANSWER BRIEF RELIES ON SOME FACTS ANTITHETICAL TO THE RECORD** .......... 1

**A.** The Record Does Not Support Some Factual Premises Of Mohamed's Argument .......... 1

**1.** SHRM Made The Termination Decision After Mohamed's August 31 Submission .......... 1

**2.** The Record Shows Mohamed Requested Her Project Deadlines Be Extended .......... 2

**B.** Revisiting The Relevant Procedural Facts .......... 3

**1.** Specifics Of Instruction 13 .......... 3

**2.** SHRM Raised Questions Of Mohamed's Personal Knowledge To Testify On Behalf Of Thompson And Argued The Testimony Was Prejudicial .......... 3

**3.** The Court Made A Final Ruling On SHRM's Objections To Mohamed's Testimony About Thompson .......... 4

**II. THE COURT COMMITTED REVERSIBLE ERROR WHEN IT GAVE INSTRUCTION 13, WHICH EQUATED § 1981 CAUSATION WITH TITLE VII CAUSATION** .......... 5

**A.** SHRM's Opening Brief Misquoted One Word Of Instruction 13, But This Does Not Affect SHRM's Challenge To The Instruction .......... 5

**B.** Mohamed Ignores *Comcast's* Reasoning Distinguishing § 1981 From Title VII .......... 7

**C.** To Sustain Her § 1981 Claim, Mohamed Needed To Prove, Absent Race, SHRM Would Not Have Discharged Her .......... 9

**D.** The Other Cases Plaintiff Relies On Are Inapposite .......... 12

**E.** Multiple Courts Have Made Clear The Causation Standards Of Title VII and § 1981 Discrimination Are Markedly Different .......... 14

**F.** Discrimination And Retaliation Have Different Standards Under Title VII .......... 17

**III. MOHAMED TESTIFYING ABOUT WHAT THOMPSON TOLD HER AND WHAT SHE BELIEVED ABOUT THOMPSON'S DISCHARGE WAS IMPROPER HEARSAY** ............ 18

**A.** Mohamed's Testimony About Thompson Was Inadmissible Hearsay, And It Was Reversible Error To Allow It............................18

**B.** SHRM's Argument Invoking Federal Rule Of Evidence 602 Was Asserted As Part Of Its Hearsay Objections...............................19

**C.** SHRM Did Not Waive Its Arguments Related To FRE 403..............20

**IV. THE COURT SHOULD EITHER REDUCE THE DAMAGES OR ORDER A NEW TRIAL**....................................................................... 21

**A.** Mohamed Did Not Provide Sufficient Evidence To Support Her Emotional Distress Award ....................................................21

**B.** SHRM Did Not Forfeit An Argument Related To The Jury Note, As The Note Is Simply Evidence Of The Jury's Inflamed Passion....23

**C.** The Punitive Damages Violate SHRM's Due Process Rights And Must Be Reduced Or A New Trial Should Be Ordered.....................23

**V. CONCLUSION** ............................................................................ 27

CERTIFICATE OF COMPLIANCE.................................................... 28

CERTIFICATE OF DIGITAL SUBMISSION ...................................... 29

CERTIFICATE OF SERVICE ........................................................... 30

## TABLE OF AUTHORITIES


**Cases** **Page(s)**

*Akridge v. Alfa Ins. Cos.*,
93 F.4th 1181 (11th Cir. 2024) ....................15, 17

*Arevalo-Carrasco v. Middleby Corp., Inc.*,
851 F. App'x 628 (7th Cir. 2021) ....................15

*United States ex rel. Barrick v. Parker-Migliorini International, LLC*,
79 F.4th 1262 (10th Cir. 2023) ....................16

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996)....................24, 26

*Bostock v. Clayton County*,
590 U.S. 644 (2020)....................6, 8, 10, 11, 12, 13, 14, 15

*CBOCS West, Inc. v. Humphries*,
553 U.S. 442 (2008)....................18

*Comcast Corp. v. National Ass'n of African American-Owned Media*,
589 U.S. 327 (2020)....................7, 8, 9, 11, 13, 14, 15, 16

*Cont'l Trend Res., Inc. v. OXY U.S.A. Inc.*,
101 F.3d 634 (10th Cir. 1996) ....................24

*DePaula v. Easter Seals El Mirador*,
859 F.3d 957 (10th Cir. 2017) ....................10

*DeYapp v. Tracy*,
Civ. No. 02–452....................24

*Faulkner v. Super Valu Stores, Inc.*,
3 F.3d 1419 (10th Cir. 1993) ....................19

*Frappied v. Affinity Gaming Black Hawk, LLC*,
966 F.3d 1038 (10th Cir. 2020) ....................10, 12

*Fresquez v. BNSF Ry. Co.*,
52 F.4th 1280 (10th Cir. 2022) ....................23

*Gross v. FBL Fin. Servs., Inc.*,
557 U.S. 167 (2009)....................14, 16

*United States v. Hinson*,
585 F.3d 1328 (10th Cir. 2009) .......................................................................................19

*Horinek v. Spirit Aerosystems, Inc.*,
834 F. Supp. 3d 1210 (D. Kan. 2026).....................................................................................26

*Ismael v. Roundtree*,
161 F.4th 752 (11th Cir. 2025) .......................................................................................16

*Jones v. Oklahoma City Public Schools*,
617 F.3d 1273 (10th Cir. 2010) .................................................................................6, 14, 16

*Jones v. United Parcel Serv., Inc.*,
674 F.3d 1187 (10th Cir. 2012) .....................................................................................24, 25

*Joppy v. HCA-Healthone LLC*,
No. 1:22-CV-00986-CNS-STV, 2026 WL 2364070 (D. Colo. Aug. 14, 2026)......................24

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
6 F.4th 293 (2d Cir. 2021) .........................................................................................7, 15

*Lompe v. Sunridge Partners, LLC*,
818 F.3d 1041 (10th Cir. 2016) .....................................................................................25, 26

*Mayorga v. Merdon*,
928 F.3d 84 (D.C. Cir. 2019).......................................................................................13

*McDonald v. City of Wichita*,
735 F. App'x 529 (10th Cir. 2018) .................................................................................9, 12

*United States v. McGlothin*,
705 F.3d 1254 (10th Cir. 2013) .....................................................................................20, 21

*Osterhout v. Board of County Commissioners of LeFlore County*,
10 F.4th 978 (10th Cir. 2021) .......................................................................................22

*Perrell v. Financeam. Corp.*,
726 F.2d 654 (10th Cir. 1984) .......................................................................................13

*Rodemaker v. Shumphard*,
859 F. App'x 450 (11th Cir. 2021) .................................................................................14

*Schneider v. City & County of Denver*,
47 F. App'x 517 (10th Cir. 2002) .....................................................................................3

*Shaw v. AAA Engineering & Drafting, Inc.*,
213 F.3d 519 (10th Cir. 2000) .......................................................................................20

*Smith v. Cipolla*, No. 21 CV 1387, 2023 WL 2646718 (N.D. Ill. Mar. 27, 2023), *aff'd*, No. 23-2085, 2024 WL 5102485 (7th Cir. Dec. 13, 2024) ....................................14, 22

*Smith v. Northwest Financial Acceptance, Inc.*, 129 F.3d 1408 (10th Cir. 1997) ..........................................................................21, 22

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).................................................................................23, 25

*Subotic v. Jabil, Inc.*, No. 22-13880, 2024 WL 797140 (11th Cir. Feb. 27, 2024) ..................................................12

*T.R. v. Howard*, Civ. No. 20-276 GBW/JHR, 2024 WL 2795811, at *8 (D.N.M. May 31, 2024).................................................................................24

*Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232 (10th Cir. 2002) ..........................................................................7

*Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019 (10th Cir. 2021) ..........................................................................11

*United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207 (10th Cir. 2000), *aff'd*, 532 U.S. 588 (2001) ............................................23, 26

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013).................................................................................14, 16

*Valenzuela v. Coleman*, No. 18-cv-00329-CMA-STV, 2022 WL 2528330 (D. Colo. July 7, 2022)............................25

*Wilcox v. Homestake Mining Co.*, 619 F.3d 1165 (10th Cir. 2010) ..........................................................................12

*Wilkerson v. Shinseki*, 606 F.3d 1256 (10th Cir. 2010) ..........................................................................13, 14

*Wulf v. City of Wichita*, 883 F.2d 842 (10th Cir. 1989) ..........................................................................21

*Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329 (11th Cir. 2023) ..........................................................................17

*Ziparo v. CSX Transp., Inc.*, 160 F.4th 314 (2d Cir. 2025) ..........................................................................15, 16

**Statutes**

42 U.S.C. § 1981......................................................5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18

ADEA ........................................................................................................6, 7, 10, 13, 15, 17

False Claims Act ........................................................................................................16

Price-Anderson Act........................................................................................................12

Title VII ..................................................................6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 27

**Other Authorities**

Federal Rule of Evidence 403..........................................................................3, 5, 20, 21

Federal Rule Of Evidence 602..........................................................................19, 20

# ARGUMENT

## I. THE ANSWER BRIEF RELIES ON SOME FACTS ANTITHETICAL TO THE RECORD

### A. The Record Does Not Support Some Factual Premises of Mohamed's Argument

#### 1. SHRM Made The Termination Decision After Mohamed's August 31 Submission

The record shows SHRM[1] decided to discharge Mohamed after she turned in incomplete work on her final deadline. [App. Vol. 3 at 56, 62, 74, 95-98, 126, 132-133]. Barley and Morris testified they made the discharge decision "on August 31st," and Schacht made his decision "on September 1st, 2020…." [*Id.* at 59-60, 96-98, 118, 126, 132-33, 254].

Mohamed asserts HR employee Keren Maldonado's ("Maldonado") testimony shows SHRM decided to discharge Mohamed before August 31. Doc. 23 ("Answer Br.") at 17.[2] But this inference is unsupported. SHRM assigned Michael Jackson ("Jackson"), SHRM's Manager of Employee Experience, to Mohamed's case in June. [Supp. App. Vol. II at 324; App. Vol. 3 at 140]. But in late August, he asked Maldonado to assist in preparing Mohamed's discharge documents because Jackson "had a … medical leave and couldn't be there" on August 31. [Supp. App. Vol. II at 297]. Maldonado was "brought in to make sure that [she] understood how

---

[1] Capitalized terms have the same meaning as in the Opening Brief, Doc. 18 ("Opening Br.").

[2] For all citations to briefs, SHRM cites to the page numbers provided by the party submitting the brief, not the page numbers CM/ECF assigned.

to support [Barley] in a termination that ***could*** happen." [*Id.* at 295-96] (emphasis added). Jackson prepared Mohamed's discharge paperwork ahead of management making a discharge decision because he sought to "prepare[] … documents that may or may not have been needed … during … [his] leave." [*Id.* at 329]. And he testified that simply because he and Maldonado prepared Mohamed's discharge documents before August 31 did not mean SHRM made the decision to fire her before that date—he was preparing his team for all the scenarios that could occur while he was on leave, "even remote ones." [App. Vol. 3 at 140].

#### 2. The Record Shows Mohamed Requested Her Project Deadlines Be Extended

Mohamed asserts "she never requested extensions." Answer Br. at 15. True, she never specifically said, "I request an extension" in the record, but she did ask that deadlines be moved, and SHRM extended those deadlines. [App. Vol. 3 at 37-41, 53, 79-80, 90, 93, 104-107, 113-115, 118, 126, 163, 195-197, 205-207, 222-225, 230-232]. For example, in mid-July, Mohamed's projects were still not complete, so Barley extended the deadline to August 31, 2020. [*Id.* at 40-41, 50, 90, 93, 114-116]. Then, on August 11, 2020, Mohamed wrote,

> For Digital HR, the target completion date mentioned below, July 2020, was set prior to management's decision to incorporate Deborah Waddill's book, Digital HR, with the program. ***The completion date below should be adjusted accordingly.***

[*Id.* at 223] (emphasis added). To now argue that writing a "completion date …

should be adjusted" is not requesting an extension shows Mohamed's reliance on semantics over reality.

### B. <u>Revisiting The Relevant Procedural Facts</u>

#### 1. Specifics Of Instruction 13

As provided in Mohamed's Answer Brief, ahead of trial, there was significant argument around what became Jury Instruction 13. Answer Br. at 19-22. The district court adopted Mohamed's November 5, 2025 proposed race discrimination instruction, which, in part, read:

> Regarding the second element, race must be a "but-for" cause of Ms. Mohamed's termination. SHRM may be held liable for race discrimination if other factors contributed to its decision to terminate Ms. Mohamed, as long as Ms. Mohamed can show that her race was the factor that made a difference. Ms. Mohamed's race does not need to be the sole or primary cause of Defendant's decision to terminate her.

[Supp. App. Vol. I at 126; App. Vol. 1 at 198].

#### 2. SHRM Raised Questions Of Mohamed's Personal Knowledge To Testify On Behalf Of Thompson And Argued The Testimony Was Prejudicial

In its motions in limine, SHRM cited *Schneider v. City & County of Denver*, 47 F. App'x 517, 526 (10th Cir. 2002), which cites Federal Rule of Evidence 403 ("FRE 403"), using the case to argue any probative value of testimony about Thompson did not outweigh its prejudicial effect. [App. Vol. 1 at 141].

When Mohamed began her testimony about what Thompson told her, SHRM

objected. [App. Vol. 3 at 14]. At a sidebar, SHRM argued that the testimony was unduly prejudicial:

> This is the very basis of our motion in limine…. They are 100 percent offering it to show what happened to Ms. Thompson. There has to be an inference drawn with what happened to Ms. Mohamed. ***And the jury has to believe that what happened to Ms. Thompson in fact happened, was true. It's too prejudicial***.

[*Id.* at 14-15] (emphasis added). Additionally, SHRM raised Mohamed's lack of personal knowledge after the district court asked Mohamed's counsel: "Do you anticipate … that Ms. Thompson is going to be testifying at any time?" [*Id.* at 15]. Mohamed's counsel confirmed Thompson would not, and SHRM argued, "I am being denied an opportunity to cross-examine a witness … What matters is what happened to Ms. Thompson, and she's not here for me to cross-examine her on it." [*Id.; see also id.* at 17] ("I'm being denied an opportunity to even challenge the comment because the witness who made the comment … is not here for me to cross-examine. That's why we have hearsay rules.")

#### 3. The Court Made A Final Ruling On SHRM's Objections To Mohamed's Testimony About Thompson

After the sidebar, the district court ruled: "… I do find that this is … being used not for the truth of the matter asserted, and it's thus not hearsay. I will give a limiting instruction to the jury …." [App. Vol. 3 at 19]. Mohamed later testified Thompson "shared that she's feeling that she's being treated different and shared

that she feels that Ms. Barley is treating her in a discriminatory way." [*Id.* at 33]. SHRM did not object to this testimony because the district court had given a definitive ruling on SHRM's objection to the precise issue, so further objection would have been futile. [*Id.* at 19].

Next, Mohamed testified that SHRM firing Thompson caused Mohamed concern because after "Thompson raised concerns about Ms. Barley's discriminatory behavior … she was fired because of performance issues." [App. Vol. 3 at 43]. SHRM objected, with counsel arguing, "[t]hat belief has to assume that the statement was actually made and that the statement was true." [*Id.* at 43-44]. The district court overruled the objection and did not give a curative instruction. [*Id.* at 44]. SHRM later reiterated both its hearsay objection and argument that Mohamed's testimony about Thompson was more prejudicial than probative under FRE 403 in its motion for a new trial. [App. Vol. 1 at 240-41].

## II. THE COURT COMMITTED REVERSIBLE ERROR WHEN IT GAVE INSTRUCTION 13, WHICH EQUATED § 1981 CAUSATION WITH TITLE VII CAUSATION

### A. SHRM's Opening Brief Misquoted One Word Of Instruction 13, But This Does Not Affect SHRM's Challenge To The Instruction

SHRM acknowledges its Opening Brief inadvertently quoted Instruction 13 as requiring race to be "the factor that made ***the*** difference" rather than "the factor that made ***a*** difference." But this misquotation does not alter SHRM's argument that the Instruction is inconsistent, as the tension in Instruction 13 arises from its

statement that “race does not need to be the ***sole or primary*** cause.” [App. Vol. 1 at 198] (emphasis added). This statement is incorrect and inconsistent with the phrase “the factor that made a difference,” such that the misquoted article does not alter SHRM’s argument. The phrase “the factor that made a difference” (or, for that matter, “the factor that made the difference”) might have been part of a correct jury instruction if it were not for the inclusion of the later incorrect statement. But the Instruction’s statement that race need not even be a “primary cause” contravenes the nature of § 1981’s unique “but-for” standard, which differs from the standard for Title VII.

As Mohamed points out, the phrase, “the factor that made a difference,” comes directly from *Jones v. Oklahoma City Public Schools*, 617 F.3d 1273 (10th Cir. 2010), an ADEA case. *Id.* at 1277 (“an employer may be held liable under the ADEA if other factors contributed to its taking an adverse action, as long as ‘age was the factor that made a difference.’”). SHRM takes no issue with the court having borrowed language from an ADEA case, given both the ADEA and § 1981 follow the same but-for causation standard.

Instead, the inconsistency comes from incorporating language from *Bostock v. Clayton County*, 590 U.S. 644 (2020), a Title VII case, given that Title VII has a completely different causation standard than § 1981 and the ADEA. “The antidiscrimination provisions in the ADEA and Title VII are ‘materially different,’

and [courts'] 'interpretation of the ADEA is not governed by Title VII decisions.'" *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 n.5 (2d Cir. 2021) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 173, 175 (2009)). Combining these "materially different" standards was plain error. Thus, Instruction 13, "considered as a whole," failed to "properly guide[] the jury in its deliberations," and was highly "prejudicial" to SHRM, requiring reversal. *Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1240, 1242 (10th Cir. 2002). Because the ADEA and § 1981 have the same causation standard, it is axiomatic that language that does not work for the ADEA will not work for § 1981, even if it works for Title VII.

### B. Mohamed Ignores *Comcast*'s Reasoning Distinguishing § 1981 From Title VII

In *Comcast Corp. v. National Ass'n of African American-Owned Media*, 589 U.S. 327 (2020), the Supreme Court clarified § 1981's causation standard. *Id.* at 331-32. Mohamed declines to engage with the Court's reasoning related to "the statute's text, its history, and [the Supreme Court's] precedent..." *Id.* at 333. Section 1981 provides "[a]ll persons ... ***shall have the same right*** … to make and enforce contracts, to sue, be parties, [and] give evidence … as is enjoyed by white citizens." *Id.* (emphasis added) (quoting 42 U.S.C. § 1981). Given that text, the "but-for" causation standard under § 1981 means:

> If the defendant would have responded the same way to the plaintiff even if he had been white, an ordinary speaker of English would say that the plaintiff received the "same" legally protected right as a white person. Conversely, if the defendant would have responded differently but for the plaintiff's race, it follows that the plaintiff has not received the same right as a white person.

*Id.*

This is markedly different than the Title VII standard delineated in *Bostock*, which allows for "multiple but-for causes" because of its ultimate "motivating factor" test for causation. In fact, the Supreme Court clarified that *Bostock's* definition applies only to Title VII cases:

> ***When it comes to Title VII***, the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision. ***So long as the plaintiff's sex was one but-for cause*** of that decision, that is enough to trigger the law.

*Bostock*, 590 U.S. at 656 (emphasis added).

Incorporating this multiple but-for causation from *Bostock* into an instruction about § 1981 causation fails to address the difference in the legislative histories of the two statutes, which is precisely what differentiates the but-for test under § 1981 from the motivating factor version of the but-for test that applies to Title VII cases.

Specifically, in 1991, Congress amended both Title VII and § 1981 but *did not* incorporate Title VII's motivating factor test into § 1981. *Comcast,* 589 U.S. at 337. That Congress simultaneously chose "to amend one statute in one way and a

second statute in another way" requires the conclusion that Title VII and § 1981's standards are different. *Id.* at 338. Mohamed ignores this difference by asserting race need not be the primary cause of SHRM's actions for her to succeed under § 1981. But *Comcast* makes clear that if a plaintiff cannot show a defendant would have responded differently if the plaintiff were a different race, the plaintiff has not proven her case under § 1981. *Id.* at 333. Under § 1981, "but for the plaintiff's race" means race was the primary reason for the defendant's actions, because all things being equal, the defendant would have acted differently had that single factor changed.

### C. To Sustain Her § 1981 Claim, Mohamed Needed To Prove, Absent Race, SHRM Would Not Have Discharged Her

"To prevail" on a § 1981 claim "a plaintiff must initially plead and ultimately prove that, ***but for race***, it would not have suffered the loss of a legally protected right." *Comcast*, 589 U.S. at 341. SHRM does not argue that the district court should have instructed the jury race needed to be the sole cause of Mohamed's discharge for her to prevail. To the contrary, "jury instructions equating but-for causation and 'sole cause' are legally erroneous." *McDonald v. City of Wichita*, 735 F. App'x 529, 531 (10th Cir. 2018). The problem with Instruction 13 was that it incorporated a Title VII standard—"race does not need to be the sole ***or primary cause***"—when advising on the requirements of a § 1981 claim. [App. Vol. 1 at 198] (emphasis added). That language was especially problematic given this Court's recognition that, to prove but-for causation, a plaintiff must prove "***discrimination was a***

***primary factor*** in the employer's decision." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (emphasis added) (providing causation standard for pretext under the ADEA).

The Equal Employment Opportunity Commission ("EEOC") relies on *Bostock*, the Title VII case, to argue that § 1981 discrimination does not require race to be the sole or primary cause of the adverse action. Doc. 41 ("EEOC Brief") at 11-16, 18-20. But the EEOC, like Mohamed, offers no authority that would permit the use of Title VII's more lenient standard in a § 1981 case, given that Title VII's more lenient standard derives from Title VII's motivating factor test, which, in turn, derives from the specific language used to amend Title VII in 1991 *that was not also incorporated into the amendments to § 1981*.

The EEOC also relies on *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038 (10th Cir. 2020), which holds "Title VII forbids 'sex-plus' discrimination in cases in which the 'plus-' characteristic is not itself protected under the statute." *Id.* at 1045-46. Like the cases Mohamed looks to, the *Frappied* Court discusses *Bostock* in the context of only Title VII, which, unlike § 1981, also prohibits discrimination based on sex or gender. *Id.* at 1046.

Mohamed did not allege race discrimination under Title VII—she alleged § 1981 discrimination, which brings about two differences: (1) it avoids Title VII's

cap on punitive damages, but (2) requires a more exacting causation standard than Title VII.

Importantly, as the EEOC acknowledged, this Court has never held that *Bostock*, the Title VII case, overrules Tenth Circuit authority that states "a plaintiff must prove the alleged discrimination was a 'primary factor' in the defendant's adverse employment action" as to § 1981 cases. *Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019, 1028 n.3 (10th Cir. 2021); *see* EEOC Brief at 19-20. Nor should *Bostock's* Title VII analysis impact the causation standard under § 1981, as *Comcast* itself makes clear that a plaintiff ***alleging a § 1981 violation*** must prove, absent race, the defendant would not have engaged in adverse action. The statute requires a plaintiff to show "the defendant would have ***responded differently but for*** the plaintiff's ***race***," meaning SHRM would have acted differently absent Mohamed's race. *Comcast*, 589 U.S. at 333 (emphasis added).

Instruction 13 permitted the jury to find for Mohamed without answering *Comcast*'s critical counterfactual question: would SHRM have discharged her if she were of a different race, everything else being equal? With Instruction 13, the instruction pushed the jury to find for Mohamed ***even if her inability to complete assignments was <u>the primary reason</u> for her discharge***. This was plain and reversible error.

### D. <u>The Other Cases Plaintiff Relies On Are Inapposite</u>

Mohamed's entire argument about Instruction 13 turns on *Bostock*, which, again, is a Title VII case. *See* 590 U.S. at 655. Because of this, she fails to distinguish the nuances in the cases she offers the Court, and her explanation for the faulty jury instruction falls flat.

In addition to *Bostock*, Mohamed invokes *Wilcox v. Homestake Mining Co.*, 619 F.3d 1165 (10th Cir. 2010), an opinion about an "action brought under the Price-Anderson Act, 42 U.S.C. § 2210" where the plaintiff failed "to make a sufficient showing of but-for causation" in a toxic tort case. *Id.* at 1166, 1169-70; *see* Answer Br. at 30 (quoting *Wilcox*, 619 F.3d at 1173 (Lucero, J., concurring)). In *Wilcox*, there is no mention of § 1981 or any antidiscrimination statute. Mohamed then turns to *McDonald*, a case about Title VII ***retaliation***. *See* Answer Br. at 30. While Mohamed is correct that Title VII ***retaliation*** has a causation standard like § 1981, *McDonald* does not hold that a plaintiff can prevail merely by showing that retaliation was one of many reasons for a defendant's action. The case reiterates, "Title VII retaliation claims require proof that the desire to retaliate was ***the but-for cause*** of the challenged employment action." *McDonald*, 735 F. App'x at 532 (emphasis added). *See id.*[3]

[3] The EEOC's argument fares little better, relying primarily on *Frappied*, a Title VII sex discrimination claim, and *Subotic v. Jabil, Inc.*, No. 22-13880, 2024 WL 797140

The same is true in *Wilkerson v. Shinseki*, 606 F.3d 1256 (10th Cir. 2010), an ADEA case in which the plaintiff "could not prove that 'age was a factor that made the difference.'" *Id.* at 1267. Again, SHRM agrees that but-for causation under ADEA and § 1981 are equivalent—SHRM argued as much in its Opening Brief. Opening Br. at 25-28. But holding that a "plaintiff is not required to show that age was the sole motivating factor in the employment decision" is different from holding that it need not even be the ***primary*** factor. *See Wilkerson*, 606 F.3d at 1266. To provide the proper but-for causation standard under ADEA, "[t]he jury must understand ***that it is not enough that age discrimination figure in the decision*** …; ***age must 'make a difference' between termination and retention*** … 'but for' … age discrimination, the employee would not have been adversely affected." *Perrell v. Financeam. Corp.*, 726 F.2d 654, 656 (10th Cir. 1984). In both § 1981 and the ADEA, a plaintiff must establish the adverse action would not have occurred absent discrimination. *Comcast*, 589 U.S. at 334 (holding actions taken "on account of" or "by reason of" race satisfy the but-for causation requirement) (citing *Gross*, 557 U.S. at 176-77).

The "straightforward rule" Mohamed offers improperly combines the lower standard presented in *Bostock* with the "more exacting standard" provided in

(11th Cir. Feb. 27, 2024), and *Mayorga v. Merdon*, 928 F.3d 84 (D.C. Cir. 2019), both of which are Title VII national origin discrimination cases. EEOC Br. at 8.

*Comcast*, *Wilkerson*, *Gross*, and *Jones*. Her argument demonstrates Instruction 13 contravened *Comcast*.

### E. <u>Multiple Courts Have Made Clear The Causation Standards Of Title VII and § 1981 Discrimination Are Markedly Different</u>

While Title VII and § 1981 discrimination share elements of proof, "[o]ne key difference … is that a § 1981 plaintiff 'must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right.'" *Rodemaker v. Shumphard*, 859 F. App'x 450, 451-52 (11th Cir. 2021) (quoting *Comcast*, 589 U.S. at 341); *Smith v. Cipolla*, No. 21 CV 1387, 2023 WL 2646718, at *6 (N.D. Ill. Mar. 27, 2023), *aff'd,* No. 23-2085, 2024 WL 5102485 (7th Cir. Dec. 13, 2024) (internal citations omitted) (holding causation standards in Title VII and § 1981 "are different. Under Title VII, a plaintiff must only demonstrate that race … was a motivating factor in the adverse employment decision. A more exacting standard governs [§] 1981 claims. A plaintiff must show, but for her race, the adverse employment action wouldn't have occurred."). This "more exacting standard" requires "[c]ausation in fact—*i.e.*, proof that the defendant's conduct ***did in fact cause*** the plaintiff's injury." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346 (2013) (emphasis added) (defining but-for causation for Title VII retaliation, not discrimination).

Circuits that have compared Title VII's and § 1981's causation standards after *Comcast* and *Bostock* have come to the same conclusions as SHRM: Title VII's

standard is distinct from, and "'more forgiving'" than, § 1981's but-for standard, as "'liability can sometimes follow [under Title VII] even if [a protected trait] *wasn't* a but-for cause of the employer's challenged decision.'" *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1192 (11th Cir. 2024) (quoting *Bostock*, 590 U.S. at 657) (emphasis in original); *see also id.* at 1193 (citing *Comcast*, 589 U.S. at 337) (holding *Comcast* "declin[ed] to extend this motivating-factor standard to claims brought under 42 U.S.C. § 1981 because of the distinct histories of Title VII and § 1981 and the absence of this motivating-factor language in § 1981."); *Lively*, 6 F.4th at 303-04 (differentiating the causation standards in the ADEA and Title VII); *Ziparo v. CSX Transp., Inc.*, 160 F.4th 314, 330 (2d Cir. 2025) (quoting *Bostock*, 590 U.S. at 657) ("Other statutes ***impose a lessened burden*** on plaintiffs: Title VII discrimination claims, for example, require a plaintiff to show that a protected trait was 'a motivating factor' in a defendant's challenged employment practice, a 'more forgiving standard' for plaintiffs since liability can follow even if the trait was not a but-for cause of the discrimination.") (emphasis added). The Seventh Circuit held after *Comcast* and *Bostock* that, "[u]nder § 1981, the race- … based discrimination must have been the determinative reason for [a] firing. If discrimination were merely one reason for [a] termination, [the plaintiff] could still prevail under Title VII's 'motivating factor' standard." *Arevalo-Carrasco v. Middleby Corp., Inc.,* 851 F.

App'x 628, 630-31 (7th Cir. 2021) (citing *Comcast*, 589 U.S. 327, 340-41; *Bostock*, 590 U.S. 644, 656).

Even when circuits, like the Eleventh, have held that in a § 1981 case, "[a] plaintiff can even succeed where there are multiple but-for causes," they have not gone as far as Instruction 13's language. *See Ismael v. Roundtree*, 161 F.4th 752, 761 (11th Cir. 2025) (quoting *Bostock*, 590 U.S. at 656); *Ziparo*, 160 F.4th at 329 (quoting *Bostock*, 590 U.S. at 656) (stating "but-for causation can be 'a sweeping standard' because '[o]ften, events have multiple but-for causes.'"). While Mohamed and the EEOC point to these cases as evidence that Instruction 13's "sole or primary cause" language was not problematic, Answer Br. at 29-30; EEOC Br. at 10, unlike the Instruction, these cases do not eliminate the requirement that race satisfy the counterfactual test provided in *Comcast* or fail to clarify the importance § 1981 places on race. The circuits that pull the idea of multiple but-for causes into § 1981 claims (which the Tenth Circuit has not)[4] still distinguish the causation required, clarifying that alleging "multiple but-for causes…does not relieve [a plaintiff] of her

[4] The EEOC also invokes *United States ex rel. Barrick v. Parker-Migliorini International, LLC*, 79 F.4th 1262 (10th Cir. 2023), for the proposition that "events 'have multiple but-for causes.'" EEOC Br. at 5 (quoting *Barrick*, 79 F.4th at 1277 (quoting *Bostock*, 590 U.S. at 656)). But this case applies *Bostock*'s reasoning to the False Claims Act, not § 1981, and does not hold the but-for causation standard in *Nassar*, *Gross*, and *Jones* means the protected class or action need not be the factor that made a difference in the decision to engage in an adverse action. *See Barrick*, 79 F.4th at 1276-77.

obligation to show ***an unlawful but-for cause*** resulted in the alleged wrongful action," *i.e.*, that race was the factor that made a difference. *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1340 (11th Cir. 2023) (emphasis added). Instruction 13 did not clarify Mohamed's responsibility to prove that, absent her race—the unlawful but-for cause—SHRM would not have acted. With the instruction, the district court misled the jury, applying *Bostock*'s "more forgiving" standard to Mohamed's § 1981 claim, and severely prejudicing SHRM. This was clear legal error, meriting a new trial.

### F. Discrimination And Retaliation Have Different Standards Under Title VII

SHRM chose to attack Instruction 13 over 15 because the legal error in Instruction 13 is much more obvious, given that Title VII discrimination does not follow the "but-for" causation standard. Conversely, Title VII ***retaliation*** has the same but-for causation standard as § 1981 and ADEA. *Akridge*, 93 F.4th at 1193 (citing *Nassar*, 570 U.S. at 353) ("the Supreme Court has pointed out that Congress chose to place a motivating factor language in only a subset of Title VII claims and not as to other Title VII claims, such as retaliation, which still use but-for causation."). Simply because SHRM focused on Instruction 13 in its post-judgment motions does not mean Instruction 15 was not also problematic—it simply means the district court's importing *Bostock*'s discrimination standard into a § 1981 discrimination instruction was so clearly erroneous as to create reversible error.

The one case Mohamed offers to support her position, *CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008), establishes only "§ 1981 encompassed retaliation claims" in addition to discrimination claims. *Id.* at 448. *Humphries* does not address whether a plaintiff must separately establish but-for causation for each claim. The existence of both causes of action says nothing about whether the jury was properly instructed on the causation standard. Here, the language of Instruction 13 caused the jury to improperly weigh the evidence and was erroneous. It is therefore reversible error, and the only remedy is a new trial.

## III. MOHAMED TESTIFYING ABOUT WHAT THOMPSON TOLD HER AND WHAT SHE BELIEVED ABOUT THOMPSON'S DISCHARGE WAS IMPROPER HEARSAY

### A. Mohamed's Testimony About Thompson Was Inadmissible Hearsay, And It Was Reversible Error To Allow It

Mohamed's testimony about what Thompson told her was improperly admitted hearsay. Mohamed makes much of the fact that her testimony about what Thompson said, "was directly relevant to Ms. Mohamed's retaliation claim, which required her to prove she 'complained about what she reasonably believed was race discrimination or retaliation.'" Answer Br. at 37. But the fact that this testimony went to an essential element of Mohamed's claim only shows the testimony was offered for the truth of the matter asserted. "[T]he extensive admission of [the] out-of-court statements, the fact that the evidence went directly to the defendant's guilt, and the [fact that the [plaintiff] used this] evidence to establish the truth of the

matters asserted" shows the statements were impermissible hearsay. *United States v. Hinson*, 585 F.3d 1328, 1337 (10th Cir. 2009).

Nor can Mohamed show these statements were offered only for their effect on her. Nowhere was she asked—nor did she testify—how these alleged statements affected her thinking or altered her conduct; instead, Mohamed simply relayed out-of-court conversations to the jury. This is impermissible. *See Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434-35 (10th Cir. 1993). The improper admission of this testimony constitutes reversible error.

### B. SHRM's Argument Invoking Federal Rule Of Evidence 602 Was Asserted As Part Of Its Hearsay Objections

SHRM did not waive its arguments under Federal Rule of Evidence 602 ("FRE 602"). Once SHRM knew Thompson would not testify, SHRM argued it was improper for Mohamed to testify to Thompson's statements, as SHRM was "denied an opportunity to even challenge the comment because the witness who made the comment … is not here … to cross-examine." [App. Vol. 3 at 17]. Additionally, SHRM's counsel supported its objection to Mohamed's testimony about why Thompson was fired by saying, "[t]hat belief [that Mohamed was going to be retaliated against] has to assume that the statement was actually made and that the statement was true." [*Id*. at 43-44]. SHRM's objections, thus, implicitly invoked FRE 602, because SHRM pointed out Mohamed was testifying about something she did not have "personal knowledge" of but simply believed was true, without giving

SHRM the opportunity to cross-examine the source of the information. The belief was thus presented to the jury only so the jury could "assume that the statement was actually made and … was true." [*Id*.] Such an allowance was improper and reversible error.

### C. **SHRM Did Not Waive Its Arguments Related To FRE 403**

SHRM also never waived its argument under FRE 403. SHRM first raised the prejudice Thompson's testimony would cause in its motions in limine. [App. Vol. 1 at 141]. Then, at trial, during a sidebar, SHRM argued the testimony was "too prejudicial," and even with a curative instruction, if Mohamed was permitted to testify about what Thompson said, "the damage is done." [App. Vol. 3 at 15]. SHRM later reasserted this argument in its motion for a new trial, arguing when weighed against its minimal probative value the Court should have excluded this testimony under FRE 403. [App. Vol. 1 at 241].

For Mohamed to now argue waiver is disingenuous. In the case that Mohamed relies on, *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519 (10th Cir. 2000), there is no mention that the defendants raised an objection under FRE 403. The Court instead writes the defendants made no reference to FRE 403, and "[a]t trial, … simply stated that these reports were irrelevant, without arguing unfair prejudice." *Id.* at 537. And in *United States v. McGlothin*, 705 F.3d 1254 (10th Cir. 2013), the defendant "concede[d] he did not object at trial" to one piece of evidence and

objected only to relevance as to the other evidence at issue. *Id.* at 1260. Neither of these scenarios occurred here, where SHRM objected to the prejudicial nature of this testimony, and raised FRE 403 in its motions practice.

Mohamed's testimony about Thompson created unfair prejudice under Rule 403: it invited the jury to decide whether SHRM discriminated against Mohamed based on an untested accusation that SHRM had discriminated against another employee, an employee SHRM never had the chance to cross-examine.

## IV. THE COURT SHOULD EITHER REDUCE THE DAMAGES OR ORDER A NEW TRIAL

### A. Mohamed Did Not Provide Sufficient Evidence To Support Her Emotional Distress Award

If the Court does not reverse the district court's order denying SHRM's motion for a new trial, it should order remittitur. The jury's award of $1.5 million in compensatory damages was excessive and untethered to the evidence presented. Mohamed cannot dispute that she did not present any independent or corroborating "testimony or evidence of [her] emotional or mental suffering." *Wulf v. City of Wichita*, 883 F.2d 842, 875 (10th Cir. 1989) (remanding case because compensatory damages of $250,000 supported by only the plaintiff's and his wife's testimony was "excessive"). The cases on which she relies also fail to support her argument that her disparate treatment demonstrated sufficiently "abhorrent and hurtful" conduct to merit excessive compensatory damages. In *Smith v. Northwest Financial*

*Acceptance, Inc.*, 129 F.3d 1408 (10th Cir. 1997), the Court held there was, in fact, evidence that some statements made to the plaintiff "were sexually intimidating and offensive" and this verbal sexual harassment was sufficient to support the high damages award. *Id.* at 1417. Moreover, the plaintiff in *Smith* testified to physical harm, "citing nausea, migraines, … sleeplessness, consumption of sleeping pills … loss of a loan officer career, and stress in [her] relationship with her daughter," none of which Mohamed testified about. *Id.* at 1416.

Mohamed also failed to offer any independent support to her testimony. She takes issue with *Osterhout v. Board of County Commissioners of LeFlore County*, 10 F.4th 978 (10th Cir. 2021), because the plaintiff there, like Mohamed, did not offer mental health testimony. But that plaintiff "testified that he had been thrashed in the face with a flashlight and kicked in the ribs," and corroborated this testimony "with medical bills, photos, and testimony from other witnesses about [his] depression, anxiety, and lost income." *Id.* at 993, 997. Mohamed offered no such support for her testimony.

For all the reasons provided in SHRM's Opening Brief, Mohamed's evidence cannot sustain the excessive compensatory damages award because her testimony showed only garden-variety, short-lived emotional distress, not substantial physical and emotional harm that merits a $1.5 million award.

### B. **SHRM Did Not Forfeit An Argument Related To The Jury Note, As The Note Is Simply Evidence Of The Jury's Inflamed Passion**

The jury's note asking who would receive punitive damages demonstrates that the jury was inflamed with passion and prejudice against SHRM, which SHRM argued in its motion for a new trial. [App. Vol. 1 at 245-46] (quoting *Blair v. Eagle-Picher Indus., Inc.*, 962 F.2d 1492, 1499 (10th Cir. 1992) (arguing verdict "'result[ed] from jury passion and prejudice….'"). SHRM is not raising a new argument that the Court advised the jury incorrectly or that there was a deficiency related to the note. It is simply pointing out that the jury note is further evidence—besides the excessive amount of damages awarded—that there is "an irresistible inference that passion, prejudice, corruption or another improper cause invaded the trial." *Fresquez v. BNSF Ry. Co.*, 52 F.4th 1280, 1315 (10th Cir. 2022). By asking, "[w]ho receives punitive damages AND [i]s there a formula or max value for punitive damages," [App. Vol. 1 at 214], the jury demonstrated its goal was simply to punish SHRM, which is not sufficient to support excessive damages. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422-23 (2003).

### C. **The Punitive Damages Violate SHRM's Due Process Rights And Must Be Reduced Or A New Trial Should Be Ordered**

Finally, the Court should remit Mohamed's $10 million punitive damages award because it is "constitutionally infirm." *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1232 (10th Cir. 2000), *aff'd,* 532 U.S. 588 (2001).

The three guideposts that determine whether the punitive damages would survive constitutional scrutiny weigh in SHRM's favor. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575-85 (1996). As to reprehensibility, Mohamed essentially concedes she suffered no physical and little economic harm. *See* Answer Br. at 50. SHRM also did not act with "indifference or a reckless disregard for the health or safety of" a wide group of people and did not put Mohamed's safety at risk. *See Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1207 (10th Cir. 2012); *cf. T.R. v. Howard*, Civ. No. 20-276 GBW/JHR, 2024 WL 2795811, at *8 (D.N.M. May 31, 2024) (noting defendant's conduct affected "both Plaintiff and other female students" which suggested "he acted with reckless disregard to the health and safety of Plaintiff and other students"); *DeYapp v. Tracy*, Civ. No. 02–452 JP/RLP, 2006 WL 8443773, at *4 (D.N.M. Aug. 14, 2006) (finding factor weighed in favor of "finding of reprehensibility" where "conduct showed a reckless disregard of the health and safety of both" plaintiffs).

Concerning Mohamed's financial vulnerability, that SHRM was Mohamed's employer does not itself establish financial vulnerability. When courts find financial vulnerability, the repercussions of the defendant's actions are more severe than those described here. *See, e.g.*, *Cont'l Trend Res., Inc. v. OXY U.S.A. Inc.*, 101 F.3d 634, 639 (10th Cir. 1996) (holding plaintiffs were financially vulnerable given they "claim[ed] that their business was almost decimated"); *Joppy v. HCA-Healthone LLC*, No. 1:22-CV-00986-CNS-STV, 2026 WL 2364070, at *40-41 (D. Colo. Aug. 14, 2026)

(finding "financial vulnerability factor" favored plaintiff because she "was a newly single mother" who suffered "numerous and severe adverse effects … following her termination, including the inability to 'provide shelter for [herself] and [her] daughter'"); *Valenzuela v. Coleman*, No. 18-cv-00329-CMA-STV, 2022 WL 2528330, at *9 (D. Colo. July 7, 2022) (finding plaintiff's financial vulnerability "tilt[ed] in favor of finding" reprehensibility where he was "sole breadwinner" and testified his "lost income had severe repercussions on [his] family, including [he and his wife] were unable to pay bills and forced to send their children … to California because they were unable to support them"). Moreover, "the financial vulnerability factor does not have particular relevance in this case, where the harm [Mohamed] suffered was [emotional] rather than a reprehensible exploitation of financial vulnerability through fraud or other financial misconduct." *Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1066 (10th Cir. 2016). Under *State Farm*, these circumstances place the conduct at a low degree of reprehensibility.

As to the second factor, the 6.67:1 ratio is not supported. "[W]here compensatory damages are already substantial, a ratio of 1:1 may be the most the Constitution will permit." *Lompe*, 818 F.3d at 1070; *Jones*, 674 F.3d at 1208 ("When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee."). True, district courts in this circuit have held similar ratios

constitutionally permissible. *See Horinek v. Spirit Aerosystems, Inc.*, 834 F. Supp. 3d 1210, 1223 (D. Kan. 2026) (finding "ratio between punitive damages ($1,000,000) and the post-remittitur actual damages ($261,497.60) on each claim is 3.825:1, with the total punitive award at 7.65:1" permissible). But the compensatory damages in those cases were not as substantial as Mohamed's $1.5 million compensatory damages award. "[C]ompensatory damages have often been considered 'substantial' when they are over $1,000,000." *Lompe,* 818 F.3d at 1068-69. Reviewing "the facts and circumstances of the [SHRM's] conduct and the harm to [Mohamed]," the 6.67:1 ratio is constitutionally excessive, given how "substantial" her compensatory damages are. *See id.* at 1068. Accordingly, this guidepost indicates the punitive damages award is "constitutionally suspect," and a 1:1 ratio sits at the outermost limit of any constitutional punitive damages award. *See id.* at 1070.

Third, the Court compares the "punitive damages award with the civil or criminal penalties that could be imposed for comparable misconduct." *United Int'l Holdings, Inc.*, 210 F.3d at 1232. This guidepost is not about the notice of the damages that could result in a punitive award but invites the "reviewing court [to] … 'accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue.'" *Gore,* 517 U.S. at 583. Reviewing the statutory

caps available under Title VII, and cases like Mohamed's, it is evident the award is excessive. *See* Opening Br. at 45-47.

Accordingly, and for the reasons in the Opening Brief, the Court should order that the punitive damages award be remitted.

## V. CONCLUSION

For the foregoing reasons and those provided in its Opening Brief, SHRM respectfully requests this Court reverse the district court's order denying SHRM's motion for a new trial, ordering a new trial with a corrected jury instruction and excluding testimony about Thompson. In the alternative, the Court should significantly reduce Mohamed's damages award.

Dated: November 2, 2026

Respectfully submitted,

*/s/ Tanja Darrow*

Tanja Darrow
tdarrow@littler.com
Virginia L. Woodfork
vwoodfork@littler.com
Kelsey A. VanOverloop
kvanoverloop@littler.com
LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, Colorado 80202
Telephone: 303.629.6200
Facsimile: 303.629.0200

*Attorneys for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this Reply Brief complies with the word limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B)(ii). According to the word-processing system used to prepare this brief, the word count for this brief, excluding the Corporate Disclosure Statement, the Table of Contents, the Table of Authorities, and the certificates of counsel, is 6,479. This Reply Brief also complies with Rule 32(a)(5), because it was prepared in 14-point Times New Roman font.

Dated: November 2, 2026

Respectfully submitted,

*/s/ Kelsey A. VanOverloop*

Tanja Darrow
tdarrow@littler.com
Virginia L. Woodfork
vwoodfork@littler.com
Kelsey A. VanOverloop
kvanoverloop@littler.com
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, Colorado 80202
Telephone: 303.629.6200
Facsimile: 303.629.0200

Attorneys for Defendant-Appellant

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that: 1) all required privacy redactions have been made; 2) the ECF submission is an exact copy of any hard copies that were filed (if any); and 3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, **1.463.93.0,** most recently updated on **November 2, 2026,** and according to the program are free of viruses. I further certify that the information on this form is true and correct to the best of my ability and belief formed after a reasonable inquiry.

Dated: November 2, 2026

Respectfully submitted,

*/s/Kelsey A. VanOverloop*

Tanja Darrow
tdarrow@littler.com
Virginia L. Woodfork
vwoodfork@littler.com
Kelsey A. VanOverloop
kvanoverloop@littler.com
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, Colorado 80202
Telephone: 303.629.6200
Facsimile: 303.629.0200

Attorneys for Defendant-Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of November, 2026, a true and correct copy of the foregoing Reply Brief was filed with the Clerk of Court using the CM/ECF system and served via CM/ECF to the following:

| | |
|---|---|
| Ariel Beryl DeFazio<br>Lowrey Parady Lebsack LLC<br>1490 Lafayette Street, Suite 304<br>Denver, CO 80218<br>Tel: 303-593-2595<br>ariel@lowrey-parady.com<br>*Attorneys for Plaintiff-Appellee* | Hunter Anthony Swain<br>Swain Law LLC<br>1490 North Lafayette Street, Suite 303<br>Denver, CO 80218<br>Tel: 720-815-5281<br>hunter@swainemploymentlaw.com<br>*Attorneys for Plaintiff-Appellee* |
| Steven Winkelman<br>Equal Employment Opportunity Commission<br>Office of General Counsel<br>131 M. St. N.E., 5th Floor<br>Washington, D.C. 20507<br>Tel.: (202)921-2564<br>Steven.winkelman@eeoc.gov<br>*Attorneys for the EEOC* | Darold W. Killmer<br>Liana G. Orshan<br>Reid R. Allison<br>Killmer Lane, LLP<br>1543 Champa St., Suite 400<br>Denver, CO 80202<br>Tel.: (303) 571-1000<br>dkillmer@killmerlane.com<br>lorshan@killmerlane.com<br>rallison@killmerlane.com<br>*Attorneys for Amicus Curiae Colorado Plaintiff Employment Lawyers Association* |

*/s/Kelsey A. VanOverloop*
Attorney